(120 App. Div. 818)

### AMORY v. WASHINGTON STEAMBOAT CO., Limited.

(Supreme Court, Appellate Division, First Department. July 17, 1907.)

**1. BROKERS—ACTION FOR COMPENSATION—AMOUNT OF RECOVERY.**

Where a broker undertakes to sell certain steamboats for the owner and to receive his commission from the purchaser, unless the owner shall close the sale without the broker's consent, in which case the owner is to pay the commission, the broker, on breach of contract by the owner, must recover the value of his services from the owner, based upon a quantum meruit, and is not entitled as a matter of law to the amount he was to receive from the purchaser, had the owner carried out his contract.

**2. TRIAL—VERDICT—CORRECTION BY COURT**

Where the damages were unliquidated and the verdict for plaintiff failed to state any amount, the court had no power to correct the verdict by inserting as damages the entire amount claimed by the plaintiff.

Lambert, J., dissenting.

Appeal from Trial Term, New York County.

Action by William N. Amory against the Washington Steamboat Company, Limited. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

Eugene A. Philbin, for appellant.

Henry M. Earle, for respondent.

INGRAHAM, J. The agreement as alleged in the complaint was that two steamboats, the property of the defendant, should be placed in plaintiff's hands to sell for defendant, and that, if the plaintiff was successful in finding a purchaser willing and able to buy the said steamboats, the plaintiff was to look for his commission from said purchaser and not from the defendant:

"Provided, however, that if the defendant, the Washington Steamboat Company, Limited, effected any sale of the said properties with a purchaser procured by plaintiff, except through and by the consent of the plaintiff, then and in that case the defendant, the Washington Steamboat Company, Limited, was to become liable to the plaintiff for such commission as the plaintiff would have become entitled to from the prospective purchaser, to wit, the sum of five thousand dollars ($5,000)."

The complaint further alleges that the plaintiff found a purchaser willing and able to buy certain properties of the defendant, and submitted to the defendant a proposition of purchase from said purchasers, the terms of which the defendant agreed to; that there was a memorandum in writing of the sale of these steamboats, signed by the purchaser procured by the plaintiff and by the plaintiff on behalf of the defendant, the plaintiff at the same time procuring from the purchaser an agreement that after the transfer of title of the property by the defendant to the purchaser he would pay the plaintiff the sum of five thousand ($5,000) dollars; that subsequently the defendant entered into an agreement with the prospective purchaser procured by the plaintiff, under which the defendant sold to such purchaser these two steamboats, and that the defendant by such acts violated its con-

tract with and damaged the plaintiff to the extent of $5,000; and the complaint demands judgment against the defendant for that sum.

Upon the trial the plaintiff testified that he received an offer from one Randall, who lived in Washington, to buy the two steamboats belonging to the defendants, named the Wakefield and Arrowsmith; that this purchaser offered the plaintiff $45,000 for these two boats, which sum included the plaintiff's commission. The plaintiff then offered in evidence a written agreement, dated March 4, 1901, signed by Randall, the purchaser, and the plaintiff, which provided that plaintiff had sold to Randall the river steamboats Wakefield and Arrowsmith for $40,-000, in four equal annual payments of $10,000 each, on the first Monday of October in the years 1901, 1902, 1903, and 1904; and another agreement, dated the same day, whereby, in consideration of the sale to Randall of these steamboats, Randall agreed to pay to the plaintiff in cash the sum of $5,000 at the time of the payment of the first installment of the purchase price of said steamboats. The plaintiff also introduced in evidence a letter from one Faulhaber, who was secretary to Henry Hart, president of the defendant, which was as follows:

"Dear Sir: Confirming your understanding with me, Mr. Hart directs me to say, if you are successful in completing the sale of the Washington Steamboat Company, Limited, property, you are to receive no commission from us, but must look for same from the buyers of the property. Please confirm this arrangement, so that no misunderstanding will occur later."

In reply to this letter plaintiff wrote to Faulhaber a letter, dated the same day, as follows:

"Dear Sir: I have your favor of the 20th inst., and confirm our agreement as therein stated, with the understanding, of course, that you are not to close the sale with my purchasers except through me, in which case as I have personally informed you, my commission is to be paid by the purchasers, and I am to receive no commission from Mr. Hart."

Accepting these letters, which stated in substance the verbal agreement as testified to by plaintiff, as constituting the agreement between the plaintiff and the defendant, the plaintiff was authorized to sell the defendant's property, which, it would seem, included these two steamboats, certain ferry franchises and wharf property in the city of Washington and Alexandria, Va., and also two other steam ferryboats. The plaintiff was to receive no commission from the defendant, upon condition that the defendant was not to close the sale with the purchasers procured by the plaintiff, except through the plaintiff. It further appeared that, after the plaintiff had procured this purchaser, other agents of the defendant finally consummated a sale of the steamboats to the purchaser with whom the plaintiff has made the contract, upon more advantageous terms to the defendant as to payments, but for the same amount of $40,000 that the purchaser was to pay for the boats under the contract with the plaintiff. Assuming that this was a failure to comply with the conditions under which the plaintiff agreed to look to the purchasers for his commission, the result of such a violation of the conditions that would follow would be that the plaintiff would be entitled to recover his commission from the defendant, based upon a quantum meruit. The fact that the plaintiff and the purchaser had agreed as to the amount of the commission would not entitle the

plaintiff as a matter of law to the amount that he was to receive from the purchaser in case the sale had been carried through upon the terms proposed by the plaintiff.

At the end of the trial, the court submitted the question to the jury; the court instructing the jury that they were to determine whether or not there was a contract between the plaintiff and the defendant, then were to determine whether there was a breach of such contract by the defendant that imposed any liability upon it, and whether the plaintiff performed the obligations of his contract, and then, if the jury found these questions in favor of the plaintiff, they were to determine whether or not there was any interference by Hart, the defendant's president, which defeated plaintiff's recovery of his commission from his principal, the purchaser. There was no express instruction to the jury as to the amount to which the plaintiff was entitled, nor did the court leave it to the jury to determine the amount of the recovery in the event that they found the plaintiff entitled to a verdict. The jury then retired, and a sealed verdict was ordered to be returned on the next morning. On the following morning the jury handed in the sealed verdict, which was simply a verdict for the plaintiff. No amount being named, the court stated, "You find a verdict for the plaintiff for the full amount of $5,000," to which the foreman answered, "$5,000." The tenth juror then stated that "no amount was agreed upon." The court then stated to the jury, "You have no amount returned," and the fourth juror stated that "there was no amount mentioned." Thereupon the court stated to the counsel that the case would have to go back on the calendar, as the jury had separated. When defendant's counsel asked if the court would grant a motion for a new trial, the court said: "There is no new trial about it. This is a mistrial." The jury were then discharged. Subsequently at the same term, upon motion by the plaintiff, the court by order corrected the verdict by inserting the words and figures, "five thousand ($5,000) dollars, with one thousand six hundred and sixty-five ($1,665) dollars interest, amounting to a total of six thousand six hundred and sixty-five ($6,-665) dollars," and directing the clerk to enter judgment in conformity with such sealed verdict as corrected, whereupon judgment was entered for this sum, and the plaintiff appeals from the judgment, and also from the order correcting the verdict.

We think the court was without power to correct the verdict. This is not a case in which the damages were liquidated, so that the plaintiff, if entitled to recover at all, was entitled to a liquidated amount. The court undoubtedly, when the verdict was presented in which no amount was stated, could have sent the jury back to determine the amount to which the plaintiff was entitled; but having failed to do that and having discharged the jury, two jurors having stated that no amount as to the verdict in favor of the plaintiff had been agreed upon by the jury, the amount of the verdict was never fixed by the jury, but it was the court that determined the amount of the plaintiff's recovery and not the jury. In this case we think the damage, if any, was unliquidated, and what plaintiff was entitled to recover was the value of his services, and not the amount that he would have received from the purchaser, had the defendant carried through the contract with

the purchaser that he had made under his employment by the defendant. The amount of the plaintiff's damages being thus unliquidated, it was manifestly improper for the court to assume the function of the jury and on motion determine the amount of the verdict. An entirely different question is presented where the damages are liquidated, and where the plaintiff, if entitled to recover at all, is entitled as matter of law to recover a fixed amount; but where the damages are unliquidated, and the question as to the amount of the recovery is a question for the jury, as we think it was in this case, the jury must determine the amount of the verdict, and not the court. In this case, if plaintiff was entitled to recover, he was entitled to a verdict as if there had been no provision in the contract as to the payment of the plaintiff's commission by the purchaser, as the condition upon which the defendant was to be relieved from the payment of the plaintiff's commission was not complied with by the defendant. But the amount of the recovery was the value of the plaintiff's services, and that amount should have been determined by the jury.

It follows that the order correcting the verdict must be reversed, and the judgment entered upon the verdict as corrected must also be reversed, with costs to the appellant to abide the event.

CLARKE and HOUGHTON, JJ., concur. PATTERSON, P. J., concurs in result.

LAMBERT, J. (dissenting). The plaintiff alleged, as his cause of action, that the defendant, a corporation, was in the years 1899, 1900, and a portion of 1901, the owner of certain steamboats, then located in the city of Washington; that Henry Hart, the president of the corporation and its authorized agent, requested the plaintiff to find a purchaser willing and able to buy certain properties of the defendant; that the plaintiff entered into a contract with the defendant, whereby it was agreed that the property should be placed in the hands of the former for sale, and that, if the plaintiff was successful in finding a purchaser willing and able to buy such property of the defendant through the plaintiff, said plaintiff was to look for his commissions from said purchaser, and not from the defendant; that this agreement was limited by a proviso that if the defendant effectuated a sale of the said properties with a purchaser procured by plaintiff, except through and by the consent of the plaintiff, then in that case the defendant was to become liable to the plaintiff for such commissions as the plaintiff would have become entitled to from the prospective purchaser, which it is established in the present case would have been $5,000. There is no dispute that the plaintiff did find a purchaser who was willing and able to buy two steamboats of the defendant, which appears to have constituted the chief property owned by the defendant and which it was desired to sell, and that such proposed purchaser agreed to pay to the defendant the sum of $40,000 for such steamboats; that the plaintiff communicated such offer to the defendant, through its president, Mr. Hart, and that the latter authorized the closing of a contract upon this basis; that the plaintiff did enter into a contract with his proposed purchaser; that such contract was delivered to Mr.

Hart, and that the defendant corporation met and formally ratified this contract, by authorizing the sale of the steamboats; and that subsequently the defendant, without the knowledge of the plaintiff, completed this sale to the plaintiff's purchaser, upon substantially the same terms and conditions as those involved in the plaintiff's contract of sale, the only difference being in a present payment of $1,000 on account of the sale, with a consequent lessening of the deferred payments, which were to be made on the same dates as those agreed upon in the plaintiff's contract. In connection with the negotiation at which the plaintiff's purchaser agreed to pay the defendant $40,000 for the steamboats, there was an agreement on the part of the proposed purchaser to pay the plaintiff the sum of $5,000 as a commission, and it appears that this fact was not communicated to Mr. Hart or to the defendant; but as the plaintiff's agreement with the defendant was merely to find a purchaser who would pay to the defendant a satisfactory price, and as the defendant agreed to accept $40,000, we cannot fail to agree with the learned court at Trial Term, in its charge to the jury, that the defendant had no interest in this matter. The defendant was not bound to take $40,000 for its property; but if it was willing to accept that sum, and did agree to accept it, knowing that the plaintiff had an interest in securing the largest possible compensation for his services, it has no reason to complain because the latter did not tell just how profitable the transaction promised to be. The plaintiff himself might have purchased the property at the figure named, if he could have arranged the payments, and no one would have a right to complain; and the case is not altered because the plaintiff found another party who was willing to pay him the sum of $5,000 in addition to a sum which the defendant agreed to accept as a satisfactory price.

It is urged that there was included in the agreement between Hart and the plaintiff that there was other property connected with the steamboats which was also to be sold, and that it does not appear that the entire contract was performed. The answer admits that Hart and the plaintiff entered into an agreement "which in substance provided that, if said plaintiff found a purchaser willing and able to buy said steamboats, he (said plaintiff) was to look for his commission from said purchaser and not from the defendant, but alleges that said agreement included other property besides said steamboats." But this contract was not a contract on the part of the plaintiff to sell the steamboats and this other property. It was an agreement to attempt to find a purchaser for any or all of the property who should be satisfactory to the defendant, and his commissions were to come from the purchaser. The plaintiff did not undertake to sell all of the property. That was not the condition of his employment. The answer practically admits that, if he found a purchaser willing and able to purchase the steamboats, he was to have whatever commission he could induce such purchaser to pay above the contract price; and that is what the plaintiff is suing for. He was not bound, in any event, to sell all the property to the same purchaser. There is evidence in the case from which the inference might be drawn that the plaintiff did in fact make a contract with a third party for the sale of the remainder of the property, and there is no presumption that he did not, or that he did not get the

commission which he might have earned upon such sale. In the case at bar that would have nothing to do with his right to commissions on the sale of the steamboats; and as the pleadings stand it is clear, it seems to us, that the plaintiff had performed his agreement, so as to be entitled to the commissions on the steamboats, when he had found a purchaser who was satisfactory to the defendants, and we have nothing to do with the other transactions, for it is not claimed that any commissions are due thereon.

It seems equally clear that Hart, as the president of the defendant company, did interfere with the transaction in such a way as to prevent the plaintiff collecting his commissions from the purchaser, Randall. The contract of the plaintiff with Randall, in which the latter agreed to pay $40,000 for the steamboats, and in relation to which the collateral contract for commissions aggregating $5,000 was made, was thrown aside, and a new contract was made and entered into, entirely independent of the original contract, with its collateral agreement. It is true, of course, that the new contract was in substance the original contract, only varied in details; but it was not the contract to which the plaintiff was obliged to refer as a part of his transaction with Randall, as a basis for his recovery from the latter. That is the essence of the defendant's interference. It took advantage of the plaintiff's negotiations, adopted in substance the very contract he had made, but varied it in those particulars which required a new contract; and, as the plaintiff had no relation to such new contract, it gave him no standing to enforce his collateral contract for commissions. It operated as a fraud upon his rights, and he had specially contracted that in such an event the defendant should be liable for the commissions. To reverse this judgment is to deprive the plaintiff of his contract rights as established after a trial before a jury, and it ought not to be done.

We do not agree with the contention of the defendant on appeal that the contract proved was with Henry Hart personally. While it is true, of course, that the mere fact that Henry Hart was the president of the corporation, and the owner of substantially all of the stock, did not merge the corporation in the individual, yet from the plaintiff's course of dealings with Mr. Hart, and the fact that the contract of sale as originally made by the plaintiff was substantially adopted by the defendant, and that the defendant had the advantage of the plaintiff's efforts, there is an abundance of evidence that Mr. Hart was acting in behalf of the defendant, and that he was authorized to act for the defendant in contracting with the plaintiff. The contract, as made, did not involve any liability on the part of the defendant, except in the contingency that it should interfere and take advantage of the efforts of the plaintiff, thus excluding him from the opportunity of getting his commissions from the purchaser; and the corporation having interfered, and secured the sale of its property through the plaintiff's efforts, it can hardly be justified in contending that it is not the responsible party to this action. It is true that there is much in the evidence which might be construed to mean that the contract was with Mr. Hart; but a perusal of all the testimony leads conclusively to the conviction that Mr. Hart was referred to at all times in his capacity of pres-

ident and practical personification of the corporation, and the evidence is to be understood in this sense.

It seems clear, likewise, that the contention of the defendant, on which many of its exceptions are based, that the contract was expressed in two certain letters in evidence, is untenable. These letters do not profess to reduce the terms of the contract to writing; but they refer to understandings between the plaintiff and one Faulhaber, Mr. Hart's private secretary, the writer of one of the letters, and simply indicate that Mr. Hart agreed to the understanding of the contract which the plaintiff and Faulhaber had arrived at. No one, reading the two letters, could understand the contract, and it is conceded there was a contract; and the learned court at Trial Term was correct in holding that the agreement between the parties depended upon these letters and the negotiations which preceded them. If the exceptions are viewed in the light of a contract resting partly in parol, it will be seen that there is no material error in the case.

The case went to the jury on the 7th day of November, 1906. The court ordered a sealed verdict. The following morning, November 8th, the sealed verdict was opened and read, and was found to be simply a general verdict in behalf of the plaintiff, without naming the amount. The court asked the foreman, "You find a verdict for the plaintiff for the full amount of $5,000?" The foreman responded, "$5,000." One of the jurors interposed the remark that "no amount was agreed upon," and another juror stated that "there was no amount mentioned." The court refused to grant a new trial, stating that there was a mistrial, and suggested that the parties go before the court sitting in the calendar part and have the case set down for trial. Subsequently, and on the 13th day of November, 1906, plaintiff obtained an order, returnable November 15th, before the trial justice who had presided, commanding the defendant to show cause why the "informality in the sealed verdict should not be corrected by inserting the amount for which said action was brought, and for which the jury were instructed to find, if they found their verdict in favor of the plaintiff, to wit, $5,000." Annexed to the order to show cause was the affidavit of eleven of the jurors, not including the foreman, who had announced to the court that the verdict was for $5,000, to the effect that there was no contest as to the amount for which they should find, "as the plaintiff was suing for a certain sum stated in his contract, and it was our understanding that, if the plaintiff was allowed to recover, it would be for the full sum for which he sued, viz., $5,000." On the 5th day of December, 1906, at the next term of the trial court, an order was entered, correcting the sealed verdict in harmony with the charge of the learned court, and with the verdict of the jury as that body undoubtedly intended it. At the time of entering this order a motion was made for a new trial on the minutes, and denied, and a motion was made to set aside the verdict, as amended, on a variety of grounds which fully raised the question of the power of the court.

We have recently held that where a motion was made to compel the jury to retire and bring in a verdict in accord with the charge of the court, and such motion was denied, and no exception was taken to such denial, there was no power in the court to subsequently amend the

verdict by adding interest, which the jury had specifically declined to include in the verdict (Isbell-Porter Co. v. Braker, May Term, not reported) ; but that is quite a different case from the one presented by this record. The case now before us cannot be distinguished in any important particular from that of Hodgkins v. Mead, 119 N. Y. 166, 23 N. E. 559, which was an action upon a contract, where the issue was whether the plaintiff was entitled to recover for his services, and where the amount was not in controversy. The learned court charged the jury, as in the case at bar, that if the plaintiff was entitled to recover at all he was entitled to a certain amount, which was mentioned; and, the jury having found for the plaintiff generally, without naming the amount, the practice adopted in the case at bar was instituted, and the verdict was corrected by inserting the amount which the court had charged as being the sum which the plaintiff was entitled to recover, if at all. The cases are so nearly alike in their facts that the statement of one might almost be taken for the other, and the discussion of the court in that case makes it unnecessary to do more than call attention to the opinion for the reasons which should be controlling here. Indeed, this court had already, in an opinion by Mr. Justice Ingraham, adopted the reasoning of the court in the case cited, and applied it in a case involving at least equal uncertainties. See Lowenstein v. Lombard, Ayers & Co., 2 App. Div. 610, 38 N. Y. Supp. 33 ; Duerr v. Consolidated Gas Co., 104 App. Div. 465, 93 N. Y. Supp. 766 ; Cruikshank v. Cruikshank, 38 App. Div. 580, 56 N. Y. Supp. 699 ; Clark v. Lude, 63 Hun, 363, 18 N. Y. Supp. 271.

The judgment and orders appealed from should be affirmed.